BRACEY-WELLES CONSTRUCTION CO., VS TERRY & CAMBRON.

Opinion delivered October 19, 1904.

1.  *Certiorari—No Notice of Application Necessary—Laches.*

Under Sec. 1273 Mansf. Dig. (775 Ind. Ter. Stat.) either party to an action may, whenever he conceives the record to be imperfect apply to Supreme Court and have a writ of certiorari to perfect the record .

No notice of such application is necessary and laches cannot be imputed from delay, as no time is fixed.

2. *Motion for Rehearing—Affidavits—Part of Record.*

When affidavits of counsel for both sides are considered by the court, by consent of parties, on a motion for rehearing such affidavits are a part of the record though never formally filed in the court below.

3. *Rehearing—Motion for—What Not Considered Upon—Negligence of Counsel.*

Alleged errors of procedure in taking depositions and report of special master should be raised by proper motion and exceptions within time allowed by law, and same will not be considered on motion for rehearing, after judgment, when the result of counsel's own negligence.

Appeal from the United States Court for the Central District.

WM. H. H. CLAYTON, Judge.

Action by Terry & Cambron against the Bracey-Welles Construction Company. Judgment for Plaintiffs. Defendant appeals. Affirmed.

This originally was an action at law brought on January 27, 1899, by the appellees against the appellant to recover the amount of an order drawn by one Scott G. Smith upon the appellant, and payable to the appellees, for the sum of $258.04, which order was accepted by the appellant. They also alleged that appellant was indebted to said Smith in an amount greater than said order. Summons issued, and on same day an attachment was asked for, and also that a writ of garnishment should issue against the Choctaw, Oklahoma & Gulf Railroad Company. Appellees asked for judgment for the amount of said order, and for damages and costs. Appellant on March 15, 1899, filed its answer, and denied that it accepted the order described by ap-

pellees, and denied that it was indebted to said Smith in any sum whatever; alleged, that in order to determine its liability to appellees, settlement of its account with said Smith was necessary, which was a long and complicated one, composed of divers and sundry items; and asked that said cause be transferred to the equity side of the docket to take said account. The appellant on May 20, 1899, filed its motion to transfer said cause to the equity side of the docket, and on June 19, 1899, said motion was granted by the court, and R. E. Campbell was appointed special master in said cause. On May 25, 1901, the Choctaw, Oklahoma & Gulf Railroad Company filed its answer as garnishee, showing it was indebted to appellant in the sum of $700, and on same day the special master filed his report in said cause, and attached to the same the testimony of S. N. Terry, one of the appellees, and the deposition of Scott G. Smith. The special master finds that appellant accepted said order, as alleged by appellees, and that appellant was indebted to said Smith in a sum largely in excess of the amount of said order. He further finds that the garnishee was indebted to appellant in the sum of $700, and recommends that appellees have judgment against appellant and the Choctaw, Oklahoma & Gulf Railroad Company, as garnishee, for $258.07, and for interest and costs. On June 10, 1901, this cause coming on to be heard in open court, and it appearing to the court that the report of the special master had been duly filed on May 25, 1901, and that no exceptions had been filed to the report, and the court being well and fully advised in the premises, the report of said special master was in all things approved and confirmed. The court thereupon rendered the following judgment and decree: "It is therefore ordered, adjudged, and decreed by the court that the plaintiffs have and recover of and from the defendants, Bracey-Welles Construction Company, the aforesaid sum of $258.07, and all costs herein expended; and it appearing in the special master's report as uncertain as to the exact date from which interest on said sum should be computed, and oral proof

being made this day in open court as to the date of the rendition
of the final estimate mentioned in said report, the court finds
said date to be September 1, 1898. It is therefore adjudged and
decreed that the aforesaid judgment bear interest from Septem-
ber 1, 1898, at the rate of six per cent. per annum until paid. It
is further ordered, adjudged, and decreed that the attachment
herein be sustained. And it further appearing to the court that
the Choctaw, Oklahoma & Gulf Railroad Company has been duly
summoned as garnishee herein, and has answered, admitting an
indebtedness to the defendant, Bracey-Welles Construction
Company, in the sum of seven hundred dollars, and that said
sum is sufficient to satisfy this judgment, together with interest
and costs, and master's fees, it is considered, adjudged, and
decreed by the court that the said garnishee, Choctaw, Oklahoma
& Gulf Railroad Company, pay forthwith into the hands of the
clerk of this court the amount of the aforesaid judgment, to wit,
the sum of $258.07, together with the amount of all costs herein,
together with the interest on said judgment from September 1,
1898, at the rate of six per cent. per annum, amounting to the
sum of $43.86, and also the further sum of $25 as master's fee,
for the special master, R, E. Campbell, Esq., which said sum of
$25 is hereby allowed said special master as a fee for his services
in this suit. It is further ordered that the said clerk pay, when
received from the garnishee herein, the amount of money so paid
herein by said garnishee to the plaintiff herein, or his attorneys
of record, Messrs. Hale & Brewer, less the sum of $25, master fee,
which he shall pay to the special master, R. E. Cambpell, Esq.,
and, when said money shall have been so paid in by the garnishee
aforesaid, the said garnishee, Choctaw, Oklahoma & Gulf Rail-
road Company, shall be, and it is, released and absolved from
liability to the defendant, Bracey-Welles Construction Company,
in the amount of money so paid in this suit." On June 14, 1901,
a motion to set aside the judgment and grant a rehearing was
filed by appellant, and on September 6, 1901, the court made the

following order: "Now on this day comes on to be heard in open court the motion for a new trial of this cause heretofore filed by defendant herein, and, both parties being present by attorneys— the plaintiffs by P. D. Brewer, Esq., and defendant by J. H. Gordon, Esq.—after argument by counsel, the court, being well and sufficiently advised in the premises, doth overrule defendant's motion for a new trial, to which ruling of the court defendant, by attorney, at the time excepted." Thereupon the said defendant below appealed to this court.

*S. A. Wilkinson*, for appellant.

*J. A. Hale* and *P. D. Brewer*, for appellees.

TOWNSEND, J.   The appellant has filed three assignments of error, as follows: "First.   In overruling defendant's motion for a rehearing.   Second.   In confirming the master's report, and in granting a decree, upon the evidence offered by plaintiffs. Third.   In finding that the Choctaw, Oklahoma & Gulf Railroad Company had been duly summoned as garnishee, and in ordering said company to pay the amount of the decree and costs forthwith into the hand of the clerk."

The transcript of record was filed in this court December 31, 1901.   On June 13, 1902, appellees filed an application for writ of certiorari to the clerk of the trial court to send up three affidavits made by the counsel both for appellant and appellees which were by the consent of counsel seen and heard by the court as proof on the motion for a rehearing filed herein.   "That the said three affidavits are material in the consideration of this cause, because the order of the chancellor overruling appellant's motion for a rehearing was based upon the statements contained in the said affidavits, and because it would be impossible for this

court to pass upon the question as to whether the chancellor, in the trial court, had abused his discretion in overruling the said motion for rehearing unless the said proof is made a part of the record for the consideration of this court." On same day writ of certiorari issued by the clerk of this court as follows: "* * * it has been suggested by said appellees that there is a diminution of the record filed in this case, in this: that it does not contain the affidavits of J. A. Hale, P. D. Brewer, and S'. A. Wilkinson which were read as proof on the motion for a rehearing, and setting aside of the decree rendered herein by the trial court"—to the clerk of the Central District; and on same day said clerk of the Central District certified up the three affidavits mentioned. On July 10, 1902, motion to quash writ of certiorari, and all papers and pretended records brought up thereunder, first, because no notice was given to appellant or its attorney of the application for the writ: second, because the appellees were guilty of laches in applying for this writ; third, because affidavits were never filed in the lower court, and never became any part of the record.

By section 1273, Mansf. Dig. (section 775, Ind. Ter. St. 1899), it is provided: "Where either party conceives that the copy of the record is imperfect, the clerk of the Supreme Court shall, on his application, issue a certiorari, commanding the clerk of the inferior court to transmit to the Supreme Court a true copy of the omitted or imperfect part of the record, which part shall in general terms be described in the writ." Under this section no notice of the application for the writ to the opposite party is required. No laches can be imputed, for the application can be made where either party conceives that the copy of the record is imperfect, and no time is fixed.. If the affidavits were seen and heard by the court, as proof, on the motion for rehearing, and by "consent of counsel," they were a part of the record on the hearing of that motion, and hence the motion to quash will be denied. After reading the record in this cause, and the affidavits filed and

considered by the court on the motion for rehearing, it is apparent that there is no merit in the assignments of error, or in their discussion by counsel for appellant in his brief.   The proceedings were perfectly regular, and most of the delay seems attributable to the fact that appellant caused the case to be transferred to the equity docket.

Under the assignments of error, the chief complaint of appellant's counsel is that counsel for appellees did not proceed in the case as he desired; that, after all the parties to this suit had left the district, after the special master had moved away, and after the counsel for appellant himself had moved away, and after counsel for appellant had notified counsel for appellees that he was no longer employed in the case, and refused to accept service of notice to take depositions, and such service upon him would be void and of no force, as he was no longer attorney for appellant in the case; that when appellees proceed to take the deposition of one Smith by putting the notice in the office of the clerk, as under such conditions the law requires, and the garnishee had answered, and the special master made his report, and the case was regularly reached on the call of the equity docket and no exceptions had been taken to the report of the special master, and the court had confirmed the master's report and rendered judgment—the counsel for appellant returns from his absence, "and is astounded to find that Smith's deposition had been taken without notice, that the master has reported without notice, and a decree has been granted without notice.   Will this snap judgment, this inequitable and unheard-of procedure, be tolerated in a court of equity, a court of conscience?"   It appears from the affidavit of Mr. Brewer that the counsel for appellant has been re-employed in the case, and this accounts for the astounded condition he finds himself in.   Mr. Brewer's statement in his affidavit is as follows:   "Mr. Wilkinson called Mr. Brewer to one side and informed him that he had recently been re-employed in

the Bracey-Welles cases, and that he would probably move to set the judgments aside. Brewer asked him how long since his re-employment, and he stated that it was about three or four weeks ago. Brewer suggested to him that he had had ample time to notify us, and that we had received no indication from him that he had been re-employed. He said, 'Well, I might have done that, but I was expecting to come over before the docket was closed, and thought I would be here by the time the chancery docket was reached.' This was all the explanation he made of his negligence in the matter." The alleged errors of procedure as to taking the deposition of Smith and as to the report of the special master should have been raised by proper motion and exceptions within the time allowed by law, but after judgment it is too late, when the alleged errors are the result of the counsel's own negligence.

We think the judgment of the court was correct, in refusing to grant a rehearing, and it is affirmed.

GILL, J., concurs.